JOSEPH DEVAU, Respondent, *v.* THE PENNSYLVANIA AND
NEW YORK CANAL AND RAILROAD COMPANY, Appellant.

Plaintiff, an employe of defendant, was struck by a dirt-plow which fell
from a car, one of a train from which dirt and gravel was being removed
by its use. Under the charge of the court, the jury were permitted to
find from the fact that the accident occurred, without any evidence of
negligent or unskillful construction of the plow, or of a failure to keep it
in repair, that the falling of the plow was owing to the fault of defend-
ant. *Held,* error.

(Argued October 7, 1891; decided October 20, 1891.)

APPEAL from judgment of the General Term of the Superior
Court of the city of Buffalo, entered upon an order made
November 19, 1889, which overruled defendant's exceptions
ordered to be heard in the first instance at the General Term,
and recorded judgment in favor of plaintiff upon a verdict.

This action was brought to recover damages for injuries
claimed to have been sustained by plaintiff, an employe of
defendant, by reason of its negligence.

The following is the opinion in full:

"Whether at the close of the testimony a question was pre-
sented which the plaintiff was entitled to have submitted to

the jury need not be considered, because error in the charge, as made, requires a reversal of the judgment.

" The plaintiff, while in the employ of the defendant, and on the 22d day of October, 1887, was struck by a dirt plow as it fell off one of the cars from which earth and gravel were being removed by its use, resulting in very severe injuries.

" It appears that the defendant was filling a trestle between Clinton and Seneca streets, in the city of Buffalo, with material brought from Cheektowaga, a few miles away.   The cars were loaded with a steam shovel, and men were employed to remove from the material placed on the cars all large stones, for greater safety in unloading.   The cars were then run to the trestle and unloaded with an iron machine called a plow. It was about twenty-four feet long and rested upon four wheels.   A mould-board, jointed and flanged, from three to three and one-half feet high, made of boiler iron, was bolted to the beam of the plow.   This beam was about twelve inches wide and eight inches thick, and ran its entire length ; iron braces ran across, and it was bridged with boiler iron.   At the bottom was an iron shoe, covered with a steel plate.   This plow was located on the last car of the train, and when the trestle was reached, six of the cars in the latter portion of the train were separated from the rest of the train and tied to the trestle.   On one side of the cars and extending the whole length, was bolted a piece of timber about eight inches square, called a guard-rail, and after the cars had been fastened to the trestle the engine was hitched to the plow by a cable, and the plow, which weighed from two to three tons, and in addition had piled upon it from four to five tons of railroad iron, was drawn along over the car, one side running next to the guard-rail of the car, and the other, or mould-board side, crowding the dirt off the car.   If any obstructions should cause the plow to be raised above the guard-rail, the pressure of the earth on the mould-board side would necessarily force the plow off the car onto the ground.

" On the day of the accident the plow had been drawn over one car, and was either entering upon or was partially on the second car, when it was suddenly raised up over the guard-rail and thrown to the ground.

" Plaintiff's witnesses testified that the plow had fallen off on several occasions before this. It does not appear from the evidence that there was at the time any known appliance better adapted for the purpose for which it was used than this plow, nor did the evidence of the plaintiff point out any defect in the original construction or suggest that it was not in perfect repair, nor did it tend to furnish any reason for the plow's jumping from the car.

" On the part of the defendant the evidence tended to show that it was occasioned by a large stone becoming wedged between the first and second cars, so as to cause the plow to be raised up above the guard-rail, the pressure of the earth then forcing it over the side of the car. Clearly, then, the evidence did not authorize the jury to find that the master, in the use which it attempted to make of this plow, failed to discharge its duty to the plaintiff, in that it omitted to provide suitable machinery and appliances with which to perform the work. But the court, nevertheless, instructed the jury: 'Now, it is for you to determine, was this plow properly constructed, in your judgment? There is no proof in this case as to how other cars or other plows are constructed, or whether this is better or worse than other cars or other plows. You are somewhat in the dark, but you must determine it — was this plow and these appliances properly constructed — reasonably proper, and would they ordinarily perform the duties which they were designed to perform, without accident of any character? If it was not of such a construction, then you will pass on to the question of damages, and the plaintiff is entitled to recover.' The jury were thus permitted to find from the fact that an accident occurred, without any evidence whatever of negligence or unskillful construction, or a failure to keep that which was originally properly constructed in repair, that the falling of the plow from the car was owing to the fault of the defendant. Indeed, the jury must have so found, for the charge of the court was silent as to any other ground on which to found a liability on the part of the defendant.

" As this portion of the charge was excepted to by the defendant, the judgment should be reversed."

*F. Brundage* for appellant.

*Charles A. Pooley,* for respondent.

PARKER, J., reads for reversal.
All concur.
Judgment reversed.  _____